IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CT-3125-FL

| | |
|---|---|
| DANIEL V. PARSONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| DEPARTMENT OF PUBLIC SAFETY, ) | |
| KELVIN ANDREWS, JOHN HERRING, ) | |
| DENNIS DANIELS, JILLIAN FITCH, and ) | |
| GREENE COUNTY, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on plaintiff's motion for counsel (DE 104) and plaintiff's motion for assistance with discovery (DE 128). Also before the court is defendant Greene County's motion to dismiss for failure to state a claim (DE 115). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court denies plaintiff's motion for counsel, grants plaintiff's motion for assistance with discovery, and grants defendant's motion to dismiss.

**STATEMENT OF THE CASE**

On May 23, 2013, plaintiff filed an action pursuant to 42 U.S.C. § 1983 regarding an alleged sexual assault at Maury Correctional Institution ("Maury"). On October 11, 2013, plaintiff filed a motion to appoint counsel, which the court denied on January 8, 2014.[1] On March 2, 2016, the

---

[1] Plaintiff has since filed, and the court has denied, five motions to appoint counsel. On June 9, 2014, plaintiff filed a motion to appoint counsel, which the court denied on August, 15, 2014. On August 18, 2014, plaintiff filed a motion to appoint counsel, which the court denied on September 18, 2014. On July 20, 2015, plaintiff filed a motion to appoint counsel, which the court denied on November 19, 2015. On March 10, 2016, plaintiff filed a motion to appoint counsel, which the court denied on April 14, 2016. On December 27, 2016, and March 15, 2017, plaintiff filed two motions to appoint counsel, which the court denied on April 5, 2017.

action was stayed. On April 5, 2017, the court lifted the stay and directed North Carolina Prisoner Legal Services ("NCPLS") to notify the court as to whether it would represent plaintiff in the action and to file a complaint on plaintiff's behalf. On June 28, 2017, plaintiff filed the instant motion to appoint counsel requesting the court order NCPLS to represent plaintiff's entire case, including plaintiff's monetary claims. On July 7, 2017, NCPLS notified the court they were unable to file an amended complaint on plaintiff's behalf. On July 17, 2017, plaintiff filed an amended complaint against defendants Kelvin Andrews ("Andrews"), John Herring ("Herring"), Dennis Daniels ("Daniels"), Jillian Fitch, ("Fitch") and Greene County.

On September 12, 2017, defendant Greene County filed the instant motion for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant Greene County argues that plaintiff's claims are against the Greene County Sheriff's Office, an entity that has final policymaking authority over itself, and therefore, plaintiff's claim was not properly brought against Greene County. (See Def.'s Mem. (DE 116) 3–4). On December 22, 2017, plaintiff filed the instant motion for assistance with discovery.

## STATEMENT OF THE FACTS

Except as where otherwise identified below, the facts viewed in the light most favorable to plaintiff may be summarized as follows: plaintiff is a prisoner in custody of the North Carolina Department of Public Safety. (See Am. Compl. ¶ 6). Plaintiff alleges that while incarcerated at Maury, on February 18, 2013, and February 19, 2013, he was sexual assaulted by a Maury Correctional Sergeant, defendant Andrews. (See id. ¶¶ 7, 13). On February 18, 2013, plaintiff alleges defendant Andrews escorted plaintiff to the supply room, when plaintiff was on the way to dinner. (See id. ¶ 15). In the supply room, plaintiff alleges defendant Andrews "placed his penis against [plaintiff's] buttocks and pulled him close. Defendant Andrews wrapped his hand around

2

[plaintiff's] waist to touch his penis." (Id.). Further, plaintiff alleges defendant attempted to perform oral sex on him and that defendant Andrews forced plaintiff to perform oral sex on him. (See id. ¶ 17). Then, plaintiff alleges correctional Officer Lillian Harper, a non-party, entered the supply room and defendant Andrews escorted plaintiff out. (See id.). On February 19, 2013, plaintiff alleges defendant Andrews stopped plaintiff on his way back from breakfast to dust door jams. (See id. ¶ 19). Plaintiff alleges defendant Andrews then escorted plaintiff to the F-block stairwell and tried to perform oral sex on plaintiff. (See id. ¶ 20). Plaintiff alleges defendant Andrews forced plaintiff to perform oral sex on him, and released pre-ejaculate into plaintiff's mouth. (See id.). Plaintiff alleges the incident ended when defendant Andrews received a call on his radio. (See id.). Plaintiff alleges he did not drink water or swallow, and instead spit the pre-ejaculate into a plastic bag and mailed it to his brother on February 20, 2013. (See id. ¶ 21).

On February 22, 2013, plaintiff alleges he was called to the unit managers office by non-party Ms. Washington, with defendant Andrews, and informed that other prisoners had informed them about plaintiff's DNA sample. (See id. ¶ 22). Plaintiff states he told defendant Andrews that he mailed the DNA sample to his brother. (See id.). Plaintiff alleges defendant Andrews also threatened him and made a photocopy of his prison identification card. (See id. ¶ 23). Further, plaintiff alleges he has been involved in other multiple investigations under the Prison Rape Eliminate Act, involving defendant Herring, the Maury Assistant Superintendent, and requested protective custody in early February 2013, because "he feared being raped by other prisoners." (Id. ¶¶ 26, 27). In response, plaintiff alleges defendant Herring threatened him with disciplinary actions and did not place him in protective custody. (See id. ¶ 28).

Plaintiff also brings claims against defendant Daniels the Superintendent at Maury because

3

he was aware of blind spots at the facility. (See id. ¶¶ 29, 31). Plaintiff alleges he knew of plaintiff's multiple requests for protective custody and reviews reports when prisoners request protective custody. (See id. ¶ 33). Plaintiff also brings claims against defendant Fitch, the psychologist at Maury, and alleged she failed to take any measures to ensure plaintiff's safety. (See id. ¶¶ 34, 35). Additionally, Plaintiff alleges that defendant Greene County conducted the investigation of plaintiff's sexual assault and failed to take proper measures to ensure plaintiff's safety thereafter. (See id. ¶ 36). Maury is located in Greene County. (See Def.'s Mem. (DE 116) 3). Plaintiff brings claims against defendant Greene County because the sheriff's department was responsible for investigating sexual assault and misconduct at Maury. (Am. Compl. ¶ 12).

## DISCUSSION

A.  Motion to Appoint Counsel

The court construes plaintiff's request for representation from NCPLS as a motion to appoint counsel. Plaintiff has requested counsel multiple times in this action. As stated in the court's prior orders addressing this issue, there is no constitutional right to counsel in civil cases, and courts should exercise their discretion to appoint counsel for *pro se* civil litigants "only in exceptional cases." Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). The existence of exceptional circumstances justifying appointment of counsel depends upon "the type and complexity of the case, and the abilities of the individuals bringing it." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa, 490 U.S. 296 (1989) (quoting Branch v. Cole, 686 F.2d 264 (5th Cir. 1982)); see also Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978) ("If it is apparent . . . that a pro se litigant has a colorable claim but lacks capacity to present it, the district court should appoint counsel to assist him.").

Here, plaintiff requests the court compel NCPLS to represent plaintiff on all of plaintiff's

claims. On April 5, 2017, the court ordered NCPLS to investigate whether they would represent plaintiff in this action, and on July 7, 2017, after an investigation, NCPLS notified the court they were unable to file an amended complaint on plaintiff's behalf. Plaintiff maintains NCPLS agreed to represent plaintiff, but not on his monetary claims. (See Pl.'s Mem. (DE 104) 1). In response, plaintiff filed the amended complaint without counsel. NCPLS acted in compliance with the court's order and plaintiff has demonstrated through the filings detail that plaintiff is capable of proceeding *pro se*. Therefore, plaintiff's motion to appoint counsel is DENIED.

B.  Motion for Discovery Assistance

The court now addresses plaintiff's motion for assistance with discovery. On March 2, 2016, the court stayed plaintiffs action and indicated that when the court lifted the stay it would set new deadlines for discovery and dispositive motions. On April 5, 2017, the court lifted the stay. Therefore, all discovery shall be commenced or served in time to be completed by **May 8, 2018**. All motions, including dispositive ones, shall be filed by **June 7, 2018**. Thus, the court GRANTS plaintiff's request for assistance with discovery. The court appoints NCPLS to assist plaintiff with conducting discovery. See Standing Order 17-SO-03.

C.  Defendant Greene County's Motion to Dismiss

1.  Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a

5

probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556.

Furthermore, the complaint need not set forth "detailed factual allegations," but instead must simply "plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679). In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Id. at 255 (citations omitted).

When considering a Rule 12(b)(6) motion, a court must keep in mind the principle that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); Noble v. Barnett, 24 F.3d 582, 587 n.6 (4th Cir. 1994). Nevertheless, Erickson does not undermine the requirement that a pleading contain "more than labels and conclusions." Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Twombly, 550 U.S. at 555). Furthermore, while a pro se complaint must be construed liberally, it is not the court's obligation "to discern the unexpressed intent of the plaintiff." Laber v. Harvey, 438 F.3d 404, 413 n. 3 (4th Cir. 2006).

2. Analysis

Municipal entities may not be held liable under section 42 U.S.C. § 1983 solely because they employed a tortfeasor. Rather, when a municipal entity is sued under section 1983—directly or

through an official-capacity suit—the plaintiff must plausibly allege that a "policy or custom" attributable to the municipal entity caused the violation of the plaintiff's federally protected rights. See, e.g., Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997); Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985); Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690–94 (1978); King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016); Santos v. Frederick Cty. Bd. of Comm'rs, 725 F.3d 451, 469–70 (4th Cir. 2013); Carter v. Morris, 164 F.3d 215, 218–19 (4th Cir. 1999). A violation results from a municipal entity's "policy or custom" if the violation resulted from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or a governmental "custom." Monell, 436 U.S. at 690–91; see City of St. Louis v. Praprotnik, 485 U.S. 112, 121 (1988). Whether a county has final policymaking authority on a specific issue is a question of state law. See Praprotnik, 485 U.S. at 123. The key inquiry in determining whether a county may be liable for a sheriff's actions is how state law allocates power and responsibility. See, e.g., McMillian v. Monroe Cty., 520 U.S. 781, 786 (1997); Knight v. Vernon, 214 F.3d 544, 552 (4th Cir. 2000); Parker v. Bladen Cty., 583 F. Supp. 2d 736, 739 (E.D.N.C. 2008).

"Under North Carolina law, sheriffs have substantial independence from county government." Parker, 583 F. Supp. 2d at 739. County governments do not hire sheriffs. See, e.g., id.; Little v. Smith, 114 F. Supp. 2d 437, 446 (W.D.N.C. 2000). North Carolina law also vests the sheriff with the "statutory responsibility for the care and custody of the inmates at the county jail." Vaught v. Ingram, No. 5:10–CT–3009–FL, 2011 WL 761482, at *4 (E.D.N.C. Feb. 24, 2011); see N.C. Gen. Stat. § 162-22; Landry v. North Carolina, No. 3:10-cv-585-RJC-DCK, 2011 WL 3682788, at *2 (W.D.N.C. Aug. 23, 2011). Thus, under North Carolina law, any allegations concerning personnel, training, or other law enforcement policies at the county jail fall within the

sheriff's policymaking authority and are not attributable to the county. See, e.g., Parker, 583 F. Supp. 2d at 739–40; Little, 114 F. Supp. 2d at 446. Plaintiff brings claims against defendant Greene County on the basis that the sheriff's department was responsible for investigating sexual assault and misconduct at Maury and Maury is located in Greene County. (See Am. Compl. ¶¶ 12, 36); (see also Def.'s Mem. (DE 115) 3–4). These allegations are attributable to the Greene County Sheriff's Office, and not to Greene County. See Parker, 583 F. Supp. 2d at 739–40; (Def.'s Mem. (DE 115) 3–4). Accordingly, plaintiff has failed to state a claim against defendant Greene County.

## CONCLUSION

For the foregoing reasons, the court ORDERS:

(1) Plaintiff's request for counsel is DENIED (DE 104);

(2) Plaintiff's request for assistance with discovery (DE 128) is GRANTED. All discovery shall be commenced or served in time to be completed by **May 16, 2018**. All motions, including dispositive ones, shall be filed by **June 15, 2018**. The court APPOINTS NCPLS to assist plaintiff with conducting discovery. See Standing Order 17-SO-03.

(3) Defendant Greene County's motion to dismiss (DE 115) is GRANTED. Defendant Greene County is hereby DISMISSED from the action.

SO ORDERED, this 30th day of January 2018.

LOUISE W. FLANAGAN
United States District Judge