IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CT-3125-FL

| | |
|---|---|
| DANIEL B. PARSONS, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| KELVIN ANDREWS, JOHN HERRING, DENNIS DANIELS, and JILLIAN FITCH, | ) |
| Defendants.[1] | ) |

This matter is before the court on motion for summary judgment by defendants John Herring ("Herring"), Dennis Daniels ("Daniels"), and Jillian Fitch ("Fitch") (together, "moving defendants")[2] (DE 154), and the following motions filed by plaintiff: 1) to seal correspondence from plaintiff's counsel (DE 153); 2) to unseal same correspondence (DE 160); 3) to "prove" (DE 179); and 4) for summary judgment (DE 185).[3] Moving defendants' motion for summary judgment has been fully briefed, and defendants did not file responses to the remaining motions. In this posture, the issues raised are ripe for decision. For the following reasons, the court grants moving defendants' motion for summary judgment and plaintiff's motion to seal, and denies the remaining motions.

---

[1]The court dismissed previously-named defendants Department of Public Safety, Indemnor who indemnifies North Carolina Department of Public Safety, and Greene County in separates orders. (DE 7, 18, 130).

[2]As discussed further below, defendant Andrews did not file motion for summary judgment.

[3]Also pending is plaintiff's motion to compel, filed March 25, 2019, which the court will address by separate order.

## STATEMENT OF THE CASE

On May 23, 2013, plaintiff, a state inmate proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983 alleging defendant Kelvin Andrews ("Andrews"), a corrections officer, sexually assaulted him at Maury Correctional Institution ("Maury C.I."). Plaintiff also asserts that moving defendants, who are the superintendent, assistant superintendent, and psychologist at Maury C.I., failed to protect him from sexual assaults by other inmates. Plaintiff seeks compensatory and punitive damages, and injunctive relief.

On October 11, 2013, plaintiff filed a motion to appoint counsel. On January 8, 2014, the court conducted its frivolity review of plaintiff's complaint, allowed the matter to proceed, and denied plaintiff's motion to appoint counsel.[4] On March 2, 2016, the court stayed the action pending investigation by the North Carolina State Bureau of Investigation ("SBI") into plaintiff's allegations. On April 5, 2017, the court lifted the stay and directed North Carolina Prisoner Legal Services ("NCPLS") to notify the court as to whether it would represent plaintiff in the action and file amended complaint on plaintiff's behalf. On June 22, 2017, NCPLS notified the court that they were unable to provide plaintiff with representation in this matter. On July 7, 2017, NCPLS filed notice that they were unable to file an amended complaint on plaintiff's behalf.[5]

 On July 17, 2017, plaintiff filed amended complaint, naming Andrews, Herring, Daniels, Fitch, and Greene County as defendants. On August 14, 2017, the court conducted its frivolity

---

[4]Plaintiff has since filed, and the court has denied, 11 motions to appoint counsel. (See DE 33, 34, 56, 70, 98, 130, 159, 186 (orders denying 11 motions to appoint counsel)).

[5]NCPLS reported plaintiff refused to sign the amended complaint drafted by NCPLS counsel. However, plaintiff, acting pro se, filed the amended complaint prepared by NCPLS counsel on July 17, 2017.

review of the complaint[6] and allowed the matter to proceed. On January 30, 2018, the court granted defendant Greene County's motion to dismiss.

The January 30, 2018, order also appointed NCPLS to represent plaintiff during discovery, pursuant to Standing Order 17-SO-03. The parties completed discovery on or about July 8, 2018. After discovery closed, NCPLS filed response to the court's January 30, 2018, order, stating that it assisted plaintiff with discovery in this matter, and that, in NCPLS's view, further appointment of counsel is not required in this action. The court granted NCPLS's motion to withdraw from representation on July 11, 2018.

On July 23, 2018, plaintiff filed confidential correspondence he received from NCPLS describing results of the SBI investigation and relating certain privileged information. The court temporarily sealed the correspondence, and requested that either plaintiff or NCPLS file motion to seal if either believed the correspondence should be sealed. NCPLS filed the instant motion to seal on August 15, 2018. Plaintiff, acting pro se, filed the instant motion to unseal the correspondence on August 24, 2018.

In the interim, moving defendants filed the instant motion for summary judgment on August 16, 2018, arguing the record evidence establishes they did not fail to protect plaintiff from assaults. In support of the motion, moving defendants filed memorandum of law, statement of material facts, and appendix. The appendix included moving defendants' affidavits, plaintiff's disciplinary records, Department of Public Safety ("DPS") investigatory records related to plaintiff's sexual assault allegations, pertinent DPS guidance related to Gender Identity Disorder, and plaintiff's requests for removal from protective housing. Plaintiff filed numerous responses to moving defendants' motion

---

[6]Hereinafter, all references to the "complaint" or "Compl." are to the amended complaint unless otherwise specified.

for summary judgment, and also renewed his requests for appointment of counsel.

On August 24, 2018, the court entered ordered denying plaintiff's requests for counsel, but directed defendants to provide plaintiff with access to the full SBI investigation report related to plaintiff's allegations. Defendants filed notice of compliance with the order on October 23, 2018.

On December 26, 2018, plaintiff filed the instant motion to prove. On March 8, 2019, plaintiff filed the instant motion for summary judgment. Defendants did not file responses to either motion.[7]

## STATEMENT OF THE FACTS

The facts viewed in the light most favorable to plaintiff may be summarized as follows.

A.  Incident with defendant Andrews

During the relevant time frame, plaintiff was serving a state term of imprisonment at the Maury C.I. (Daniels Aff. (DE 156-1) ¶ 8). Plaintiff informed DPS officials in March 2013 that he had been sexually assaulted on February 18 and February 19, 2013, by defendant Andrews. (Incident Report (DE 161-1) at 3[8]; see also Daniels Aff. (DE 156-1) ¶¶ 30-31).

According to a DPS incident report,[9] plaintiff reported that on February 18, 2013, defendant Andrews approached plaintiff as he was shaving his legs, and requested that he expose himself to

---

[7] As of the date of this order, defendants' deadline for responding to plaintiff's motion for summary judgment has not expired. But in light of the court's resolution of this motion, as set forth below, a response is not necessary.

[8] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

[9] Although plaintiff alleges in detail in his complaint that he was sexually assaulted by defendant Andrews, he does not provide sworn evidence describing the incident. Plaintiff, however, submitted certain DPS incident reports describing the alleged assault in his response opposing moving defendants' motion for summary judgment, and plaintiff does not contest the veracity of the summaries of the incidents contained therein. The complaint's allegations also do not directly contradict the facts recounted herein.

defendant Andrews. (Incident Report (DE 161-1) at 7). Plaintiff complied by removing the blind to his cell, and showing defendant Andrews his partially-nude body. (Id.). At approximately 4:50 p.m. that same day, plaintiff was stocking supplies in a break room when defendant Andrews entered. (Id.). Defendant Andrews allegedly groped plaintiff, and attempted to perform oral sex on him. (Id. at 6-7). Defendant Andrews then allegedly instructed plaintiff to perform oral sex on him, and plaintiff complied. (Id. at 6). According to the incident report, DPS video footage shows plaintiff and defendant Andrews enter a staff break room at approximately 4:51 p.m. on February 18, 2018. (Id. at 3). Approximately six minutes later, they exit the break room together. (Id.)

According to the same incident report, on February 19, 2013, defendant Andrews allegedly stopped plaintiff as he was returning to his cell from breakfast, and instructed him to assist with cleaning the "F-POD" of the prison. (Id.) When they entered the F-POD stairwell, defendant Andrews allegedly assaulted plaintiff by attempting to perform oral sex on plaintiff, and instructing plaintiff to perform oral sex on him. (Id.). Defendant Andrews allegedly released pre-ejaculate into plaintiff's mouth. (Id.) Plaintiff did not drink water or swallow, and instead spit the pre-ejaculate into a plastic bag and mailed it to his brother on February 20, 2013. (Id.) According to the incident reports, DPS video shows plaintiff and defendant Andrews enter the F-Pod stairwell together, and they were off camera approximately three times, between 5 and 10 minutes each time. (Id. at 2-3).[10] Plaintiff's shirt was tucked into his pants when he entered the F-POD, but was untucked when he left the stairwell. (See id. at 6).

According to the incident report, plaintiff also reported that he met defendant Andrews and non-party "Ms. Washington" in a staff office on February 22, 2013. (Id.). When Ms. Washington

---

[10]The video footage does not show defendant Andrews assaulting plaintiff. (See Incident Report (DE 161-1) at 2-3).

5

left the office, defendant Andrews allegedly stated the encounters were consensual and threatened to "mess up" plaintiff. (Id.). On March 1, 2013, plaintiff requested protective custody while DPS officials investigated plaintiff's allegations. (Id. at 3, 6).

B.     Moving Defendants' Evidence

On May 2, 2012, plaintiff reported that he was tired of having sexual relationships with certain inmates on the Green Unit at Maury C.I. and requested protective custody. (Daniels Aff. (DE 156-1) ¶ 17).[11] DPS officials placed plaintiff in administrative segregation pending the investigation. (Id. ¶¶ 17-18). At the conclusion of the investigation, DPS officials concluded plaintiff had not been sexually assaulted by another inmate, and that any sexual relationships had been consensual. (Id. ¶ 18). Nevertheless, DPS still transferred plaintiff to the Blue Unit, as he requested. (Id.).

On May 23, 2012, plaintiff was found back on the Green Unit, where he did not belong. (Id. ¶ 19). DPS officials ordered him to leave, and plaintiff responded by threatening the officers that he would accuse them of rape. (Id.). DPS officials subsequently charged plaintiff with various disciplinary infractions arising out of this incident. (Id.).

In July 2012, plaintiff lodged complaints about corrections officer Conner, including that she was having inappropriate sexual relationships with inmates. (Id. ¶¶ 20-23). Plaintiff also alleged that he was in fear for his safety because officer Conner wanted other inmates to harm plaintiff because she was jealous of him, and that an inmate had attempted to stab him with a pen. (Id.).

---

[11] Plaintiff does not provide sworn evidence describing his allegations that defendants Herring, Daniels, and Fitch failed to protect him from inmate assaults and from the assault by defendant Andrews. Moving defendants' summary judgment evidence, which is largely uncontested, provides a thorough account of their investigation and responses to the alleged assaults. As noted, defendant Andrews has not moved for summary judgment, and thus the following factual summary focuses on plaintiff's claims against moving defendants for failure to protect him from assaults.

6

Plaintiff was placed in administrative segregation during the ensuing investigation. (Id.). DPS officials initiated an investigation, and determined the allegations were unfounded or could not be substantiated. (Id. ¶¶ 21-23).

During the course of the investigation into the July 2012 allegations, plaintiff reported that he had been raped by an inmate four months earlier, in March 2012. (Id. ¶ 24). Plaintiff had not previously reported the inmate had raped him, despite reporting the inmate for other misconduct. (Id.). DPS officials completed an investigation pursuant to the Prison Rape Elimination Act ("PREA"), but determined the allegations could not be substantiated. DPS officials noted the alleged perpetrator denied the allegations after interview, there was no physical evidence of sexual assault, and that plaintiff previously had failed to report the abuse despite filing other complaints about the same inmate. (Id.; see also Ex. F, Daniels Aff. (DE 156-7)).

On December 11, 2012, plaintiff alleged he was sexually assaulted in his cell by another inmate. (Daniels Aff. (DE 156-1) ¶ 25). Plaintiff was placed in administrative segregation while DPS investigated the allegations. (Id.). During the investigation, the alleged perpetrator denied assaulting plaintiff, no third-party witnesses could confirm the assault, and plaintiff's medical examination revealed no physical evidence of sexual assault. (Id.). DPS officials thus determined the allegations could not be substantiated. (Id.; see also Ex. G, Daniels Aff. (DE 156-8) (PREA investigation report)).

On January 17, 2013, while plaintiff remained on administrative segregation pending the results of the investigation into his December 11, 2012, allegations, plaintiff sent correspondence to defendant Herring alleging he had been sexually assaulted by numerous inmates. (Daniels. Aff. (DE 156-1) ¶ 26; Ex. H, Daniels Aff. (DE 156-9)). Plaintiff's correspondence stated that he was

7

fearful he would be the victim of additional assaults if he returned to the regular population, and he requested "protective custody."[12] (Daniels. Aff. (DE 156-1) ¶ 26; Ex. H, Daniels Aff. (DE 156-9)). During the ensuing investigation, plaintiff stated that he wanted to return to regular population. (Daniels. Aff. (DE 156-1) ¶ 26; Ex. H, Daniels Aff. (DE 156-9)). Plaintiff also admitted that he had made false claims about other inmates in the past in an attempt to get transferred to a new prison. (Daniels Aff. (DE 156-1) ¶ 27).

On February 5, 2013, plaintiff wrote defendant Daniels and again requested return to regular population. (Id. ¶ 28). The following day, plaintiff signed a written statement, which stated, "I do not request [protective custody]. I do not fear for my life in general population [at Maury C.I.]. Let me out. Let me go to the Blue Unit Please." (Id.; Ex. H, Daniels Aff. (DE 156-9) at 17). That same day, plaintiff signed a request for removal from protective housing, witnessed by two corrections officers. (Daniels Aff. (DE 156-1) ¶ 28; Ex. H, Daniels Aff. (DE 156-9) at 15). Plaintiff also sent defendant Herring correspondence which requested defendant Herring throw away the grievances alleging assaults by other inmates. (Daniels Aff. (DE 156-1) ¶ 28; Ex. H, Daniels Aff. (DE 156-9) at 37). Upon completion of the investigation into the January 27, 2013, allegations, DPS officials determined plaintiff did not meet criteria for protective custody and returned him, as requested, to regular population. (Daniels Aff. (DE 156-1) ¶ 28).

In March 2013, plaintiff reported that he had been sexually assaulted by defendant Andrews. (Id. ¶ 29; Herring Aff. (DE 156-11) ¶ 5). Plaintiff, however, had not previously alleged defendant Andrews or any other DPS staff had sexually assaulted him, or that he feared that any DPS staff may assault him. (Daniels Aff. (DE 156-11) ¶¶ 29-30; Herring Aff. (DE 156-11) ¶¶ 5, 7, 9). Defendants

---

[12]Protective custody is reassignment of the inmate to a secure area and presumably is distinct from administrative segregation. (See Herring Aff. (DE 156-11) ¶ 11).

8

Daniels and Herring also testified that they were not aware of any other complaints against defendant Andrews related to sexual assaults or other sexual harassment at the time plaintiff made the allegations. (Daniels Aff. (DE 156-11) ¶ 30; Herring Aff. (DE 156-11) ¶ 7).

Upon receipt of plaintiff's allegations against defendant Andrews, DPS launched an internal investigation, and also referred the matter to local law enforcement. (Daniels Aff. (DE 156-1) ¶ 31). DPS or local law enforcement eventually requested assistance from the SBI to investigate plaintiff's allegations. (Id.). The investigation has been completed, and moving defendants do not believe any criminal charges have been filed against defendant Andrews.[13] (Id.).

Defendant Fitch, a psychologist at Maury C.I., conducted approximately fifteen individual counseling sessions with plaintiff. (Fitch Aff. (DE 156-12) ¶ 6). Defendant Fitch testified that over the course of her treatment sessions with plaintiff, he never made any comments indicating he feared for his safety, or that he had been sexually assaulted. (Fitch Aff. (DE 156-12) ¶¶ 9-12). In September 2012, plaintiff made vague comments that he had been placed in administrative segregation because someone had "put a hit out on him" but plaintiff did not appear particularly concerned for his safety and actually stated that he wanted to be released from administrative segregation. (Id. ¶ 12). In January 2013, plaintiff sent correspondence to defendant Fitch alleging that he had been assaulted and requesting that defendant Fitch report such assaults to DPS officials. (Id. ¶ 15; Pl.'s Exs. (DE 161-1) at 12). Defendant Fitch testified that she provided a copy of the correspondence to the appropriate DPS officials and maintained a copy in plaintiff's mental health records. (Fitch Aff. (DE 165-12) ¶ 15).

---

[13] Moving defendants did not submit an affidavit from defendant Andrews in support of the instant motion.

9

## DISCUSSION

A.  Motions to Seal and Unseal

The court begins with the motions to seal and unseal correspondence plaintiff received from NCPLS. As set forth above, the correspondence contains privileged legal advice and discussion of the SBI's investigation. NCPLS filed motion to seal the correspondence, but plaintiff, acting pro se, filed motion to unseal it.

Having reviewed NCPLS's motion to seal under the governing standard, the court finds the document should remain temporarily sealed at this time. See Doe v. Pub. Citizen, 540 U.S. 614 (4th Cir. 2013). However, NCPLS principally argues the document should be sealed because it contains privileged attorney-client communications. Plaintiff may waive the attorney-client privilege, and arguably has done so by filing motion to unseal the correspondence. See Hawkins v. Stables, 148 F.3d 379, 384 n.4 (4th Cir. 1998). To ensure plaintiff's waiver is knowing and voluntary, the court will deny the instant motion to unseal without prejudice to file renewed motion to unseal. Plaintiff is advised that his privileged communications with NCPLS are not subject to disclosure to defendants under the rules governing attorney-client privilege, and unsealing this correspondence may harm his litigation position by disclosing his legal strategy to opposing counsel. Plaintiff is further advised that the instant motion to seal does not prevent plaintiff from using the discovery records identified therein at trial.[14]

With these warnings in place, the court grants NCPLS's motion to seal, and denies plaintiff's motion to unseal without prejudice. Plaintiff may file renewed motion to unseal the correspondence

---

[14]To the extent the correspondence refers to record evidence that may be relevant to the instant motion for summary judgment, the court has reviewed and considered such evidence when resolving the instant motion.

after considering the court's warnings set forth above.[15]

B.     Motions for Summary Judgment

   1.     Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the

---

[15]In the event plaintiff files renewed motion to unseal the correspondence, the court will find that plaintiff has knowingly and voluntarily waived the privilege and will provide a copy of the correspondence to defendants' counsel. Defendants may then file motion to seal based on any sensitive law enforcement information contained in the correspondence.

11

inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

2. Plaintiff's Motion for Summary Judgment

Plaintiff has filed a one-page motion for summary judgment. Plaintiff's motion does not cite to any specific portions of the record showing plaintiff is entitled to summary judgment, as required under Rule 56. See Fed. R. Civ. P. 56(c) (party moving for summary judgment must "cit[e] to particular parts of materials in the record" in support of motion); Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."). Accordingly, the court denies plaintiff's motion for summary judgment.

3. Moving Defendants' Motion for Summary Judgment

Moving defendants request judgment as a matter of law on each of plaintiff's claims. The

court begins with plaintiff's claim that moving defendants failed to protect him from sexual assaults by staff or other inmates. Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners [or corrections staff]." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quotation omitted); see Hudson v. Palmer, 468 U.S. 517, 526–27 (1984); Danser v. Stansberry, 772 F.3d 340, 346 (4th Cir. 2014). To avoid summary judgment on this claim, plaintiff must show that 1) he was incarcerated under conditions posing a substantial risk of harm, and 2) that defendants were deliberately indifferent to the risk of harm. See Farmer, 511 U.S. at 834, 837–38; Danser, 772 F.3d at 347. The deliberate indifference prong requires a showing that defendants knew of disregarded an excessive risk to inmate health or safety. Farmer, 511 U.S. at 837-38; Danser, 772 F.3d at 347.

The subjective knowledge requirement can be proven through circumstantial evidence showing that the "substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." Farmer, 511 U.S. at 842 (quotation omitted); Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2013). Additionally, "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." Farmer, 511 U.S. at 843. Prison officials, however, can rebut the charge of actual knowledge by showing "that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent" or by showing they "responded reasonably" to the risk. Id. at 844; Makdessi, 789 F.3d at 134.

13

Here, DPS officials – including defendants Daniels and Herring – responded to each of plaintiff's allegations that he was sexually assaulted by other inmates by completing full investigations (including medical exams and witness interviews), and placed plaintiff in administrative segregation during the course of each investigation. Plaintiff was only allowed to return to regular population <u>after</u> the investigations were completed and plaintiff's allegations were found unsubstantiated. Moreover, as to the alleged February 2013 assault by defendant Andrews, plaintiff himself stated that he no longer feared for his safety and requested return to regular population only two weeks before the alleged assault occurred. (Daniels Aff. (DE 156-1) ¶ 28; Ex. H, Daniels Aff. (DE 156-9) at 17). Thus, although defendants correctly acknowledge plaintiff submitted numerous complaints about being sexually assaulted, moving defendants have demonstrated (and plaintiff has not contested) that they responded reasonably to the assaults and "knew the underlying facts but believed . . . that the risk to which the facts gave rise was insubstantial or nonexistent." <u>Farmer</u> 511 U.S. at 844; <u>see also</u> <u>Makdessi</u>, 789 F.3d at 136 (noting defendants can "rebut" claim of deliberate indifference by showing they believed, even incorrectly, that the plaintiff's allegations did not give risk to a risk of harm).

Additionally, to the extent plaintiff alleges defendants failed to protect plaintiff from an assault by defendant Andrews, the claim fails because plaintiff has not shown that he or any other inmate previously was at risk of assault (sexual or otherwise) by Maury C.I. corrections staff, including defendant Andrews. As noted, deliberate indifference requires a showing that defendants had knowledge of a risk of harm, or that defendants ignored a risk that was longstanding, pervasive, and well-documented. Plaintiff has not produced any evidence suggesting moving defendants were subjectively aware that defendant Andrews or other Maury C.I. staff posed a risk of sexually

assaulting plaintiff or other similarly-situated inmates. Farmer, 511 U.S. at 837-38, 842; Makdessi, 789 F.3d at 133; see also Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984) (holding prison supervisor cannot "reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct.").

As to defendant Fitch, the Maury C.I. psychologist, plaintiff alleges he informed her about various assaults and she failed to ensure his safety. Defendant Fitch testified that plaintiff sent correspondence to her discussing his concerns about his safety, and she immediately provided the letter to custody officials.[16] (Fitch Aff. (DE 156-12) ¶ 14). Plaintiff does not contest defendant Fitch's account that she provided the correspondence to custody officials. Where defendant Fitch is not a corrections officer directly responsible for plaintiff's safety, and she provided plaintiff's correspondence to the appropriate DPS personnel, plaintiff cannot establish she was deliberately indifferent to a substantial risk of harm. See Farmer, 511 U.S. at 844 (holding defendant who "responded reasonably to the risk, even if the harm ultimately was not averted" is not liable for an Eighth Amendment violation).

Finally, the court addresses plaintiff's claims that defendants Daniels and Herring violated his constitutional rights under a theory of supervisory liability.[17] To establish a supervisory liability claim, plaintiff must show 1) that the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; 2) the supervisor's response was so inadequate as to show deliberate indifference to or tacit

---

[16]Plaintiff has not produced any other admissible evidence suggesting he informed defendant Fitch about his concerns for his safety independent of the subject correspondence.

[17]Plaintiff's complaint does not directly allege a claim for supervisory liability, but in light of the liberal construction that must be afforded his complaint, the court briefly address the claim below.

15

authorization of the conduct; and 3) there was an affirmative causal link between the supervisor's inaction and the plaintiff's injury. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

The only "subordinate" official specifically identified in plaintiff's amended complaint that allegedly committed a constitutional violation is defendant Andrews. But as moving defendants have shown, there is no record evidence suggesting they were aware defendant Andrews "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury." Id.; (see Daniels Aff. (DE 156-1) ¶ 30 ("I am not aware of any complaints of a sexual nature made against [defendant] Andrews at any time during his employment with [DPS]."); Herring Aff. (DE 156-11) ¶ 7 ("I am not aware of any complaints of a sexual nature made against [defendant] Andrews at any time while I was at Maury C.I. with the exception of Plaintiff's complaint in March of 2013 – which was made approximately ten days after [defendant] Andrews allegedly sexually assaulted him.")).[18] In the absence of evidence of prior knowledge that defendant Andrews was committing sexual assaults against prisoners (or longstanding, well-documented evidence of such assaults), a supervisor cannot "reasonably be expected to guard against the deliberate criminal acts of properly trained employees . . . ." Slakan, 737 F.2d at 373; see also Randall v. Prince George's Cnty., Md., 302 F.3d 188, 206 (4th Cir. 2002).

To the extent plaintiff is alleging defendants Daniels and Herring are subject to supervisory liability based on their failure to intervene after the alleged inmate sexual assaults, the claim also lacks merit. As set forth above, DPS officials investigated each of plaintiff's claims and determined they were unsubstantiated. There is no record evidence demonstrating defendants Daniels and

---

[18]Plaintiff submitted defendant Andrews's personnel file in response to the motion for summary judgment (see DE 166), but the performance reviews and disciplinary issues addressed therein do not include any complaints that defendant Andrews was committing sexual assaults against inmates.

Herring's response to plaintiff's allegations "was so inadequate as to show deliberate indifference or tacit authorization of the alleged offensive practices." Shaw, 13 F.3d at 799; see also Slakan, 737 F.2d at 373 (holding supervisor's "continued inaction in the face of documented widespread abuses" may support a claim for supervisory liability). Accordingly, moving defendants are entitled to summary judgment on plaintiff's supervisory liability claim.

4. Plaintiff's Motion to Prove

Plaintiff also has filed motion to prove, which alleges defendants are not responding to plaintiff's requests for sex reassignment surgery. As the court previously has explained to plaintiff, his claims alleging defendants are not properly treating his Gender Identity Disorder are not part of this action. Plaintiff also cannot amend his complaint by alleging new claims in his response to a motion for summary judgment. See Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 (4th Cir. 2008) ("[D]espite the liberal pleading rules outlined by the Supreme Court, plaintiffs may not raise new claims without amending their complaints after discovery has begun."); see also Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). Accordingly, plaintiff's motion to prove is denied, but without prejudice to plaintiff pursuing this claim in a separate lawsuit.

5. Claims Remaining for Trial

Where defendant Andrews did not file a motion for summary judgment, and claims against defendant Andrews remain, this case now is ripe for entry of an order governing deadlines and procedures for final pretrial conference and trial. Defendant Andrews is DIRECTED to file within 14 days from the date of this order a joint status report informing of 1) estimated trial length; 2)

particular pretrial issues which may require court intervention in advance of trial, if any; and 3) at least three suggested alternative trial dates. In addition, the parties shall specify if they wish to schedule a court-hosted settlement conference or additional alternative dispute resolution procedures in advance of trial, and if so the date for completion of such.

## CONCLUSION

Based on the foregoing, the court rules as follows:

1) The court GRANTS moving defendants' motion for summary judgment (DE 154) and dismisses all claims asserted against defendants Herring, Daniels, and Fitch with prejudice;

2) The court DENIES plaintiff's motions for summary judgment (DE 185) and to prove (DE 179);

3) The court GRANTS plaintiff's motion to seal (DE 153) and DENIES plaintiff's motion to unseal (DE 160) without prejudice;

4) The court DIRECTS the clerk to maintain docket entry 151 under seal until further order of the court; and

5) Defendant Andrews' counsel is DIRECTED to file status report regarding pretrial and trial activities as set forth herein within **14 days** of entry of this order.

SO ORDERED, this 29th day of March, 2019.

LOUISE W. FLANAGAN
United States District Judge